IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARLON JOHNSON, | ) | Case No. 1:23-CV-1365 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| CHAE HARRIS, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

I.      **Introduction**

On July 7, 2023, Petitioner Marlon Johnson (hereinafter "Johnson" or "Petitioner"), a

prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C.

§ 2254. (ECF Doc. 1). On November 12, 2023, Johnson filed an Amended Petition. (ECF Doc.

10). On March 29, 2024, Respondent[1] filed a Motion to Dismiss Case as Time-Barred. (ECF

Doc. 12). After receiving an extension of time to file, Petitioner filed his responsive brief on May

26, 2024. (ECF Doc. 15). Respondent declined to file a reply, and the time to do so is past,

leaving this matter ripe for resolution.

The District Court has jurisdiction over the petition under § 2254(a). On August 15,

2023, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare

---

[1] Initial Respondent was listed as Annette Chambers-Smith, Director of the Ohio Department of
Rehabilitation and Correction. Petitioner has since identified Warden Chae Harris as the correct
Respondent. (ECF Doc. 14).

a Report and Recommendation. (Non-document entry of Aug. 15, 2023). On April 2, 2024, the

case was reassigned to me pursuant to General Order 2024-05. (Non-document entry of Apr. 2,

2024).

Because Johnson's petition was not filed within the one-year limitations period under 28

U.S.C. § 2244(d)(1) and because Johnson is not entitled to equitable tolling, I recommend the

District Court grant Respondent's motion and dismiss the petition in its entirety.

## II.    Factual Background

The Ohio Court of Appeals, Ninth Appellate District, Lorain County, set forth the facts of

this case on direct appeal. These factual findings are presumed correct unless Johnson rebuts this

presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Ninth District

presented the facts as follows:

> {¶11} At trial, the State presented testimony from three individuals who were
> present at the time of the shooting, M.D., T.M., W.M., and also from City of Lorain
> Police Officer Anthony Cambarare, City of Lorain Detective Cristopher Kovach,
> Ohio Bureau of Criminal Investigation Forensic Analyst Dylan Matt, and Chief
> Deputy Coroner of Lorain County Dr. Frank Miller.
>
> {¶12} W.M. testified that he had known Mr. Johnson for approximately 28 years
> and that the two were close friends. He stated that around 1:30 a.m. the night of the
> shooting, a group had gathered at his family's house with plans to go to a bar
> together. The group included Mr. Johnson, and his girlfriend. W.M. testified that
> while he was upstairs changing, he heard a commotion and came downstairs. When
> he entered the kitchen, he observed Mr. Johnson dragging his girlfriend by her leg.
> Mr. Johnson immediately dropped his girlfriend's leg, apologized for disrespecting
> W.M.'s house and retreated out the back door. W.M. then saw the victim, T.D.,
> slam the door behind Mr. Johnson. W.M. stated that he had experienced problems
> with Mr. Johnson at the house in the past.
>
> {¶13} W.M. testified that T.D. also lived at the house and was often responsible for
> making sure the door was locked and that no unwanted people came in. W.M.
> acknowledged that people had, in the past, been arrested for selling drugs out of the
> house. W.M. further acknowledged that Mr. Johnson was aware of T.D.'s role at
> the door and that he would have been aware that there would be an "obstacle" to
> regaining entrance to the house.

{¶14} W.M. testified that after T.D. slammed the door, he heard loud pounding on the bathroom window, which caused him to run outside. When outside the house, he observed a maroon vehicle with Mr. Johnson in the passenger seat backing out of the driveway. W.M. stated he punched the vehicle's window a couple of times. As the vehicle began to drive away, Mr. Johnson lowered the passenger window, and shouted an apology to W.M. for disrespecting him. W.M. testified that Mr. Johnson would not have been welcome at his home after the incident and that he believed Mr. Johnson would have understood that to be the case. W.M. stated he believed the incident was the result of Mr. Johnson being angry that his girlfriend had not left the house with him when he wanted to leave. W.M., W.M.'s girlfriend, and another woman left shortly thereafter to go to the bar. The three returned to the house just before 4 a.m.

{¶15} T.M., the teenage son of W.M., testified that he was at his father's house the night of the shooting. T.M. stated he has known Mr. Johnson his entire life and considered him an uncle. T.M. said he spent most of the night in an upstairs bedroom playing video games and Facetiming with friends. T.M. did not drink any alcohol or do any drugs that night. T.M. stated that he heard the argument from upstairs, but remained in the room.

{¶16} M.D. testified that she had known Mr. Johnson for 22 or 23 years, and that Mr. Johnson's brother was the father of two of her adult children. M.D. stated that she went to W.M.'s house about 3:30 a.m. the morning of the shooting in order to talk to someone about a mutual friend who had died. When she arrived, there were several people in the house, including Mr. Johnson's girlfriend who was leaving as M.D. arrived. The friend M.D. was looking for was not at the house, so she talked to T.D.

{¶17} M.D. was at the house for about 30 or 45 minutes when she and T.D. decided to leave the house to go to the store. M.D. stated she was going to drive because she had not been drinking or doing drugs that night. M.D. testified that as they were preparing to leave, she opened the door and T.D. immediately tried to close the door, but Mr. Johnson pushed his way into the house before T.D. could do so. M.D. observed a second individual standing on the landing below the steps behind Mr. Johnson. M.D. moved out of the way and watched as Mr. Johnson "pulled out a gun and shot [T.D.]." M.D. stated that she took off running toward the dining room and T.D. ran toward the basement. M.D. stated she heard four or five shots and that the second man had not yet entered the house when the shots were fired.

{¶18} M.D. retreated through the dining room to a living room where another woman and a child were also present. M.D. heard Mr. Johnson repeatedly ask "where she was." M.D. assumed Mr. Johnson was inquiring about his girlfriend. M.D. repeatedly told him his girlfriend was not there. M.D. watched Mr. Johnson walk upstairs still holding the gun. M.D. said Mr. Johnson appeared upset and angry.

3

{¶19} T.M. testified that while he was still in the upstairs bedroom, he heard a gunshot and M.D. also heard "running around and saying he was going to kill [her]." As a result, he went to "check it out." T.M. testified that he saw Mr. Johnson walking around the house with a gun asking where his girlfriend was. T.M. stated that he asked Mr. Johnson what was wrong, but that Mr. Johnson did not respond. Mr. Johnson eventually asked T.M. where W.M. was. T.M. stated he feared Mr. Johnson was going to shoot his dad, so he lied, and said W.M. was not there. He then watched Mr. Johnson go upstairs. T.M. followed Mr. Johnson up the stairs and saw him speaking to his father. T.M. could not hear what Mr. Johnson was saying. T.M. also stated that he observed another man, he later identified as T.P., standing on a landing choking his aunt and saying "You don't know me, you don't remember me."

{¶20} W.M. stated that when he heard gunshots, he was upstairs having a conversation with his girlfriend, another woman, and another man. According to his testimony, it sounded like six gunshots and he thought the sound was coming from "outside in the back." W.M. said he went downstairs to see what was going on and saw M.D. sitting on [a] chair, looking frightened, saying Mr. Johnson's girlfriend was not there, and pleaded "don't kill me. Please, don't kill me." W.M. said he could not see Mr. Johnson from where he was positioned, but could tell by M.D.'s body language he was coming closer. As a result, W.M. "tiptoed back upstairs" to look for a weapon. W.M. could not find a weapon and retreated to an upstairs kitchen. He stated that he did not intend to leave the kitchen, but then heard his son's voice. As soon as he heard his son, W.M. peaked around a corner and saw Mr. Johnson between him and his son. Mr. Johnson was holding a gun.

{¶21} W.M. then walked toward Mr. Johnson. W.M. stated that Mr. Johnson said, "Man, bro," "Man, I need one. I need one." W.M. believed Mr. Johnson was referring to crack, and told him he did not have any and said, "If you're going to kill me, kill me." W.M. testified that Mr. Johnson responded, telling him they were "like brothers, like I would never do that to you, you know what I'm saying, anybody else, but not you." Mr. Johnson paused, and then said "I shot [T.D.]. I think I killed him."

{¶22} W.M., M.D., and T.M. all testified that they observed a second man, identified by both W.M. and T.M. as T.P., take the gun from Mr. Johnson. W.M. stated that when the woman T.P. had pinned to the wall told him that the incident was "about a girl," T.P. said to Mr. Johnson, "you shot my gun off for a girl with no money? I should kill you, too." M.D. testified that she heard the second man say to Mr. Johnson something similar to: "How are you going to shoot my gun over a b***h and not take nothing." W.M. said that after T.P. made this statement, he took the gun from Mr. Johnson. W.M. also heard T.P. state "I ain't got s**t to do with it" and tell Mr. Johnson to leave. W.M. stated that he observed T.P. follow Mr. Johnson down the stairs.

4

{¶23} M.D. testified that she subsequently watched Mr. Johnson walk out the front door alone just as the police were arriving. M.D. said the second man was "somewhere in the back" when Mr. Johnson left the house. M.D. confirmed that when she spoke to the police that evening, she told them Mr. Johnson had shot T.D.

{¶24} Det. Kovach testified that the police found a Luger 9mm spent shell casing on the floor of the kitchen, a spent 9mm shell casing on the fourth step up on the stairway leading from the basement to the hallway off the kitchen and another spent 9mm shell casing on the first step. The police also found two additional spent shell casings in the basement. Det. Kovach stated that the basement of the house had been divided by a plywood wall and that the police had discovered three fresh bullet holes in that wall. Det. Kovach stated that the police also found fresh bullet holes in a speaker on the floor and a detergent bottle in the same area. Det. Kovach believed that the first shot was likely fired near the kitchen door and, based on the location of additional casings, the shooter likely fired the next shots from the staircase and possibly the bottom of the basement stairs.

{¶25} Officer Cambarare testified that when he arrived at the scene of the shooting, he observed a red older model Buick or Oldsmobile running in the driveway of a vacant house, and immediately made contact with the occupants of the vehicle. He testified that the occupants of the vehicle advised him that there were people shooting inside the house and that someone inside had been shot. He further testified that he advised "them" to wait where they were until he was able to determine what was going on, but that they eventually pulled away. He testified that a woman at the scene identified Mr. Johnson as the shooter and, after viewing a booking photograph of Mr. Johnson, identified him as the passenger of the vehicle. Officer Cambarare stated that after making entry into the house, the police found T.D.'s body in the basement.

{¶26} Dr. Miller testified that T.D. suffered two gunshot wounds, one of which went through his left shoulder, affected several major organs, and caused his death. He stated that bullets passed through T.D.'s body in a downward path, left to right, and back to front. Dr. Miller agreed that the wounds on T.D.'s body would be consistent with a bullet traveling downward from an elevated position on a staircase.

*State v. Johnson*, No. 18-CA-011329, 2020 WL 4933599, *3-*5 (Ohio Ct. App. Aug. 24, 2020)

("*Johnson I*").

5

### III.    State Court History

#### A.    Trial Proceedings

Johnson was indicted on 13 counts by the January 2018 term of the Lorain County Court of Common Pleas grand jury. (ECF Doc. 12-1, pp. 5-13). The indictment included: one count of Aggravated Murder under O.R.C. 2903.01(A); two counts of Aggravated Murder under O.R.C. 2903.01(B); one count of Murder under O.R.C. 2903.02(A),; two counts of Murder under O.R.C. 2903.02(B); one count of Aggravated Burglary under O.R.C. 2911.11(A)(1); one count of Aggravated Burglary under O.R.C. 2911.11(A)(2); one count of Unlawful Use of a Weapon by a Violent Career Criminal under O.R.C. 2923.132; one count of Felonious Assault under O.R.C. 2903.11(A)(1); one count of Felonious Assault under O.R.C. 2903.11(A)(2); one count of Having Weapons while Under Disability under O.R.C. 2923.13(A)(2); and one count of Having Weapons while Under Disability under O.R.C. 2923.13(A)(3). (*Id.*). All counts, save the two counts of Having Weapons while Under Disability, carried violent career criminal, firearm, and repeat violent offender specifications.  (*Id.*) Johnson pled not guilty to all charges. (*Id.* at p. 14).

On March 29, 2018, Johnson moved to appoint co-counsel and an investigator to aid the defense. (*Id.* at pp. 18-23). The state trial court granted the motion to appoint co-counsel but denied the motion to hire an investigator. (*Id.* at p. 24).

On March 30, 2018, Johnson's counsel stipulated that, due to his oversight, he provided "Counsel Only" materials to Johnson while preparing for trial. (*Id.* at p. 16). On the state's motion, as a result of this error, and due to concerns about the safety of witnesses, the trial court ordered the materials taken from Johnson and sealed for review. (*Id.* at pp. 15-16).

On April 20, 2018, the jury found Johnson guilty as to all 13 counts of the indictment, the career violent criminal specifications in Counts 1-8 and 10-11, and firearm specifications in

Counts 1-11. (*Id.* at p. 25). The state elected to sentence on Counts 1, 8, 9, and 12. (*Id.* at p. 28).

Counts 2, 3, 4, 5, 6, 10, and 11 and their specifications merged with Count 1; Count 7 and its

specifications merged with Count 8; and Count 13 merged with Count 12. (*Id.*). On May 3, 2018,

the court sentenced Johnson to life in prison with eligibility for parole after 54 years. (*Id.* at p.

29).

> **B.     Appellate Proceedings**

On May 18, 2018, Johnson, through counsel, timely filed his direct appeal with Ohio's

Ninth District Court of Appeals. (ECF Doc 12-1, pp. 32-33). He raised the following five

assignments of error:

1.     The trial court erred in denying Mr. Johnson's request for a transcript of the grand jury proceedings.

2.     Mr. Johnson did not receive effective assistance of counsel as guaranteed by the Sixth Amendment.

3.     Mr. Johnson was deprived the right to a fair trial under the State and Federal Due Process Clauses as a result of the trial court's erroneous jury instructions.

4.     The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

5.     The convictions are against the manifest weight of the evidence in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and of the Ohio Constitution.

(*Id.* at p. 38). The state responded on January 13, 2020. (*Id.* at pp. 69-108).

On August 24, 2020, the state appellate court affirmed Johnson's convictions and

sentence. (ECF Doc. 12-1, pp. 109-33; *see also Johnson I*, No. 18-CA-011329, 2020 WL

4933599).

Johnson, this time acting *pro se*, timely appealed the appellate court's decision to the

Ohio Supreme Court on September 16, 2020.[2] (ECF Doc. 12-1, pp. 134-35). In his Memorandum

in Support of Jurisdiction, Johnson raised the following five propositions of law:

1.  The trial court erred in denying Mr. Johnson's request for a transcript of the grand jury proceedings.

2.  Mr. Johnson did not receive effective assistance of counsel as guaranteed by the Sixth Amendment.

3.  Mr. Johnson was deprived the right to a fair trial under the State and Federal Due Process Clauses as a result of the trial court's erroneous jury instructions.

4.  The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

5.  The convictions are against the manifest weight of the evidence in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and of the Ohio Constitution.

(*Id.* at pp. 136-52). The state waived its memorandum in response. (*Id.* at p. 179).

On November 10, 2020, the Ohio Supreme Court declined jurisdiction of the appeal

pursuant to S.Ct.Prac.R. 7.08(B)(4). (*Id.* at p. 181; *see also State v. Johnson*, 156 N.E.3d 918

(Ohio 2020) (Table). Johnson did not appeal to the U.S. Supreme Court and his conviction

became final on February 8, 2021.

---

[2] The federal prison mailbox rule applies a relaxed filing standard, under which a prisoner's pleadings are deemed filed when given to prison officials for mailing. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012). However, Ohio state courts have rejected this standard, and accordingly, the Sixth Circuit has declined to extend this rule to state postconviction filings. *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). Therefore, Johnson's federal filings are treated with the relaxed standard of the federal prison mailbox rule, but his state filings are treated with the applicable state standard.

### C.    Post-Conviction Proceedings

#### 1.    First Post-Conviction Proceeding: Motion to Vacate Judgment

On June 22, 2018, while Johnson's counseled direct appeal was pending, Johnson also

filed a *pro se* petition to vacate or set aside judgment of conviction or sentence pursuant to Ohio

Revised Code § 2953.21. (ECF Doc. 12-1, pp. 182-206). In it, he raised one ground for relief:

"Fifth, Sixth Amendment, U.S. Constitution; Section 10, Article 1, Ohio Constitution

Compulsory Process, informed of the Nature of the Charges indictment by Grand jury, DNA

test." (*Id.* at p. 183). In support of his claim, Johnson raised issue with the "Counsel Only"

discovery materials seized from him, that DNA had been taken but was not mentioned on the

record, nor was gunshot residue testing presented at trial. (*Id.* at pp. 183-84). Johnson also on

June 10 filed a motion for appointment of counsel in his postconviction relief petition, as well as

an affidavit of indigency. (*Id.* at pp. 207-10). The state opposed Johnson's motion for

appointment of counsel. (*Id.* at pp. 211-13).  On June 27, 2018, the trial court denied Johnson's

request for appointment of counsel in his postconviction petition, as it had already fulfilled its

obligation to appoint appellate counsel in his direct appeal. (*Id.* at p. 214). The trial court also

denied Johnson's Motion to Vacate Judgment on August 22, 2018. (*See* ECF. Doc. 12-1, p. 613).

#### 2.    Second Post-Conviction Proceeding: Rule 26(B) Motion to Reopen Appeal

On November 10, 2020, again during the pendency of his direct appeal, Johnson filed a

second post-conviction motion under Ohio Appellate Rule 26(B) alleging (1) his conviction was

against the manifest weight of the evidence; (2) ineffective assistance of appellate counsel due to

failure to address and resolve inaccuracies in the trial transcript; (3) ineffective assistance of

appellate counsel due to failure to raise discovery violations on appeal; (4) ineffective assistance

of appellate counsel due to their failure to raise ineffective assistance of trial counsel claims; (5)

ineffective assistance of appellate counsel due to a failure to raise that repeat violent offender specifications could not be imposed consecutively as a matter of law; (6) the trial court erred by suppressing evidence that the firearm was involved in a previous and similar shooting; (7) the trial court erred by allowing autopsy photos be shown to the jury; (8) the trial court erred by denying his motion to appoint an investigator; (9) the trial court erred by allowing the detective to provide expert testimony on gunshot residue; (10) the trial court erred by not allowing Johnson to enter gunshot residue evidence; and (11) the trial court erred by giving the jury a flight instruction. (*See* ECF Doc. 12-1, pp. 215-25). The state opposed on December 7, 2020. (*Id.* at pp. 229-38). The state appellate court denied this motion on February 2, 2022, finding Johnson had not raised a genuine issue of ineffective assistance of appellate counsel, and that many of the issues he raised were not appropriately raised in a post-conviction motion to reopen pursuant to Rule 26(B). (*Id.* at pp. 239-44). Johnson did not timely seek review of this decision in the Ohio Supreme Court.

Respondent asserts that Johnson did not further appeal the denial of his Rule 26(B) motion with the Ohio Supreme Court. (ECF Doc. 12, p. 29). In his brief in opposition, Johnson directed this Court to his appeal, and a review of the Ohio Supreme Court's docket provided in the state court record confirms that he did indeed file a motion titled "Notice to file motion pursuant to Crim. R. 45(E), to 26(B)." (ECF Doc. 12-1, p. 625). This motion was found in the docket for the appeal of his postconviction motion made pursuant to Ohio Revised Code § 2953.21 (summarized below). (*See id.*). The Ohio Supreme Court denied this motion on July 6, 2022. (*Id.*).[3]

---

[3] As is discussed in greater detail below, only "properly filed" state postconviction motions or other collateral review will toll AEDPA's statute of limitations. Because Johnson did not timely file with the Ohio Supreme Court, this portion of his 26(B) appeal in state court will not serve to toll the statute of limitations. *See* 28 U.S.C. § 2244(d)(2).

### 3.     Third Post-Conviction Proceeding: O.R.C. § 2953.21

On December 28, 2020, Johnson filed another postconviction appeal pursuant to Ohio

Revised Code Section 2953.21. (ECF Doc. 12-1, pp. 245-73). He raised:

> Ground One: Petitioner was denied the effective assistance of trial counsel, as well
> as his right to due process and a fair trial, as a result of counsel's failure to enter
> evidence of perjury on behalf of two of the State's witnesses. There is a reasonable
> probability that had the evidence of witness perjury been disclosed, the result of
> Petitioner's trial would have been different.
>
> Ground Two: Trial counsel provided ineffective assistance, in violation of the Sixth
> and Fourteenth Amendments, for failing to move the trial court for a change of
> venue due to the pervasive pretrial publicity, which ultimately deprived Petitioner
> of a fair trial and an impartial jury (additional violations of the Sixth and Fourteenth
> Amendments).
>
> Ground Three: Trial counsel provided ineffective assistance, in violation of the
> Sixth and Fourteenth Amendments, for failing to move the trial court to sequester
> the jury.
>
> Ground Four: Petitioner's right to a fair trial and an impartial jury under the Sixth
> and Fourteenth Amendments were violated when jurors took a tour of the county
> jail where they saw the Petitioner being held in custody and in county jail issued
> clothing.
>
> Ground Five: Trial counsel provided ineffective assistance, in violation of the Sixth
> and Fourteenth Amendments, for failing to challenge the array of the jury venire.
>
> Ground Six: Petitioner was deprived of his right to confront his accusers at his
> preliminary hearing held January 9, 2018, despite his specific request to do so.

(*Id.* at pp. 261-71). The state filed a response in opposition. (*Id.* at pp. 300-14).

On January 28, 2021, the trial court denied Johnson's second postconviction petition,

ruling that Johnson's petition was both untimely and successive as well as barred by the doctrine

of res judicata. (*Id.* at p. 315; *see also id.*, pp. 316-23). Furthermore, it found Johnson's claims

were unsupported under Ohio Revised Code § 2953.21. (*Id.*).

Johnson then appealed this decision to the Ohio Ninth District Court of Appeals on

March 3, 2021. (*Id.* at p. 324). The state moved to dismiss this appeal as untimely. (*Id.* at pp.

326-27). On March 9, 2021, the state appellate court determined it was without jurisdiction to

consider Johnson's appeal because the notice of appeal was untimely filed and not in accordance

with Appellate Rule 4(A). (*Id.* at pp. 328-29). On April 30, 2021, Johnson moved the state court

to reinstate his appeal, due to a clerk's office docketing error causing the appeal period not to run

under Appellate Rule 4(C). (*Id.* at pp. 330-32). The Ohio Ninth District Court of Appeals agreed,

and reinstated Johnson's appeal on May 20, 2021. (*Id.* at p. 333).

> With his appeal reinstated, Johnson raised the following six assignments of error:
>
> Error One: Petitioner was denied the effective assistance of trial counsel, as well as his right to due process and a fair trial, as a result of counsel's failure to enter evidence of perjury on behalf of two of the State's witnesses.
>
> Error Two: Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments, for failing to move the trial court for a change of venue due to the pervasive pretrial publicity.
>
> Error Three: Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments, for failing to move the trial court to sequester the jury.
>
> Error Four: Petitioner's right to a fair trial and an impartial jury under the Sixth and Fourteenth Amendments were violated when jurors took a tour of the county jail, where they saw the Petitioner being held in custody and in county jail issued clothing.
>
> Error Five: Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments, for failing to challenge the array of the jury venire.
>
> Error Six:  Petitioner was deprived of his right to confront his accusers at his preliminary hearing held January 9, 2018, despite his specific request to do so.

(*Id.* at p. 337). The state opposed. (*Id.* at pp. 379-97). On March 31, 2022, the state appellate

court issued its decision affirming the trial court and overruling all of Johnson's assignments of

error as untimely and successive. (*Id.* at pp. 398-407; *see also State v. Johnson*, No.

21CA011732, 2022 WL 970305, *appeal not allowed,* 189 N.E.3d 826 ("*Johnson II*")).

On May 10, 2022, Johnson, *pro se*, filed a timely notice of appeal to the Ohio Supreme Court. (ECF Doc. 12-1, pp. 408-09). In his memorandum in support of jurisdiction, Johnson raised the following propositions of law:

> Error One: Petitioner was denied the effective assistance of trial counsel, as well as his right to due process and a fair trial, as a result of counsel's failure to enter evidence of perjury on behalf of two of the State's witnesses. There is a reasonable probability that had the evidence of witness perjury been disclosed, the result of Petitioner's trial would have been different.

> Error Two: Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments, for failing to move the trial court for a change of venue due to the pervasive pretrial publicity, which ultimately deprived Petitioner of a fair trial and an impartial jury (additional violations of the Sixth and Fourteenth Amendments).

> Error Three: Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments, for failing to move the trial court to sequester the jury.

> Error Four: Petitioner's right to a fair trial and an impartial jury under the Sixth and Fourteenth Amendments were violated when jurors took a tour of the county jail, where they saw the Petitioner being held in custody and in county jail issued clothing.

> Error Five: Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments, for failing to challenge the array of the jury venire.

> Error Six: Petitioner was deprived of his right to confront his accusers at his preliminary hearing held January 9, 2018, despite his specific request to do so.

(*Id.* at pp. 415-25). The state waived its memorandum in response. (*Id.* at p. 437). The Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4) on July 5, 2022. (*Id.* at p. 439; *see also State v. Johnson*, 189 N.E.3d 826 (Ohio 2022) (Table)).

### 4. Fourth Post-Conviction Proceeding: Rule 26(A)

On March 15, 2021, Johnson, *pro se*, filed an untimely application for reconsideration of the August 24, 2020 appellate court decision in his direct appeal, under Ohio Appellate Rule 26(A). (ECF Doc. 12-1, pp. 440-99). In it, he raised the following:

I.    Insufficient evidence and manifest weight of the evidence;

II.    Flight instruction reversible error where there was no flight;

III.    Johnson did not receive the effective assistance of counsel:

    a.   Failure to hire a gunshot residue (GSR) expert

    b.   Failure to hire an investigator

    c.   Failure to defend Johnson's case

    d.   Trial counsel errors regarding discovery materials

IV.    Denial of a transcript of the grand jury proceedings.

(*Id.*).

On April 17, 2023, Johnson filed a notice stating his application for reconsideration under Appellate Rule 26(A) had been pending for over fourteen months. (*Id.* at pp. 500-01). This notice acknowledged that he had filed after the ten-day limitation period, but that he had also included an instanter motion for leave to file the application untimely, and requesting the state trial court take notice of his pleadings. (*Id.*). On July 3, 2023, Johnson again filed a notice asking the court to rule on his pending application for reconsideration, noting that his appeal had remained pending for 26 months. (*Id.* at pp. 502-14). On August 7, 2023, Johnson again filed a judicial notice of his Rule 26(A) motion. (*Id.* at pp. 556-68).

**5.    Fifth Post-Conviction Proceeding: Judicial Notice under Rule 201(E)**

On June 15, 2022, Johnson filed a *pro se* motion titled "Take Judicial Notice Article II: Rule 201(E)." (*Id.* at p. 587). In it, he requested an order to clarify judgment as to the relevant legal and factual basis of the provision procedure and therein the jurisdiction. (*Id.*). The state opposed, arguing that the motion was vague and more appropriately construed as a petition for postconviction relief, and was both untimely and successive. (*Id.* at pp. 593-97).

14

On June 22, 2022, the state trial court denied Johnson's motion for clarification of judgment, finding it another attempt to file motions for postconviction relief without meeting the requirements of Ohio Revised Code § 2953.23(A)(1); as such, it was untimely and successive. (*Id.* at p. 598).

On July 7, 2022, Johnson filed a motion titled "Petition in Opposition of Government's Rebuttal of Petitioner Motion for Order to the Honorable Court to Take Judicial Notice, Pursuant to Article II, Rule 201(E) to Clarify Judgment of the Relevant Legal, Factual Basis of the Provision and Procedure and Therein Adhere to the Factual Basis of this Court Not having Subject Matter Jurisdiction." (*Id.* at pp. 599-605).

On July 11, 2022, the trial court denied Johnson's petition in opposition and motion for order, noting, "the court had proper jurisdiction and defendant was convicted by a jury." (*Id.* at p. 606). Johnson did not seek further review of these decisions.

## IV.    Federal Habeas Corpus Petition

Johnson brings 31 grounds for relief in his Amended Petition, filed in this Court on July 7, 2023. (ECF Doc. 10). In summary[4], he asserts them as follows:

> **GROUND 1:** Grand Jury Transcript Issues: [Petitioner] was denied transcript of Grand Jury. Need it for shifting of statements of the story. (ECF Doc. 10, p. 5).

> **GROUND 2:** Ineffective Assistance of Trial Counsel (No GSR expert). It is well established that an attorney's assistance is ineffective if they (1) fail to obtain expert witness testimony when it is material to the case, *Burr v. Lassiter*, 513 Fed. App'x 327, 346 (4th Cir. 2013); and/or (2) fail to investigate exculpatory evidence, *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 257-60 (7th Cir. 2003). (ECF Doc. 10-1, pp. 15-16).

---

[4] Johnson supports his grounds for relief with an extensive Memorandum in Support of Jurisdiction outlining the events surrounding T.D.'s death, Johnson's trial, and subsequent appeals. (*See* ECF Doc. 10-1, pp. 1-53). I do not recount the full Memorandum here, but have closely reviewed the document and provide a concise summary of his assertions and applicable constitutional law.

15

**GROUND 3:** Ineffective Assistance of Counsel, failed to hire investigator. (ECF Doc. 10, p. 8; ECF Doc. 10-1, p. 16).

**GROUND 4:** Ineffective Assistance of Counsel. Failure to defend my case – Trial and Appellate Counsel only made blanket statements that trial counsel failed to defend my case and how this failure prejudiced Johnson such that there was reasonable probability of a different outcome at trial. (ECF Doc. 10, p. 10; ECF Doc. 10-1, p. 17). Further, counsel was constitutionally deficient because he failed to retain an expert to decipher the telephone call; in *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985), the United States Supreme Court recognized a due process right to expert assistance under such circumstances. (ECF Doc. 10-1, p. 19).

**GROUND 5:** Ineffective Assistance of Counsel, for not complying with the discovery rules and was in violation because he never pursued exculpatory evidence. (*Id.*). Further Trial Counsel Errors regarding discovery materials. (*Id.* at p. 20). Trial counsel should have moved the court to return the discovery that had been seized and not returned because it was not marked "counsel only." Counsel's failure here resulted in Johnson being deprived of discovery, as well as his "work product" until the day of trial. Thus, both Johnson and trial counsel were unprepared for trial as they were literally precluded from discussing the State's evidence. *See Hunt v. Mitchell*, 261 F.3d 575, 583 (6th Cir. 2001), finding ineffective assistance where counsel proceeded to voir dire without ever discussing the case with the defendant. (ECF Doc. 10-1, pp. 20-21).

**GROUND 6:** Flight instruction reversible error where there was no flight. (*Id.*). Appellate counsel, and therefore the court of appeals, has erroneously confused leaving the scene of a crime with a deliberate flight from justice (*i.e.*, flight from the area in which the suspect is normally to be found in order to evade prosecution). Counsel's Assignment of Error No. 3 was Constitutionally deficient because it focused only on Johnson's departure from the scene. As a matter of law, however, departure from the scene of a crime has nothing whatsoever to do with flight. (*Id.* at pp. 21-23 (internal citations omitted)).

**GROUND 7:** Insufficient Evidence and Manifest Weight of the Evidence. (*Id.* at pp. 23-29).

**GROUND 8:** Manifest Weight of Evidence regarding testimonial evidence. (*Id.* at pp. 30-40). Had the court fully considered the physical evidence against the testimonial evidence, it would lawfully be required to conclude that the jury lost its way by convicting him. (*Id.* at p. 35). Therefore, in accordance with *State v. Beck*, 78 Ohio App. 3d 130, 132 (1991), Johnson respectfully requests that the Court find that he has properly "raise[d] an issue for [the Court's] consideration that was either not considered at all or was not fully considered" by the Court in its decision dated August 24, 2020. (ECF Doc. 10-1, p. 40).

16

**GROUND 9:** Transcript contained errors and omissions material to the case. Appellate counsel's performance was constitutionally deficient for failing to address and resolve inaccuracies in the transcript that were material to a proper resolution of the appeal. (*Id.* at p. 41).

**GROUND 10:** Multiple Discovery Violations. Appellate counsel was ineffective for failing to raise the issue that Johnson was subjected to multiple discovery violations, despite being specifically advised of this in a letter dated 7/15/19 to counsel that was docketed on 7/16/19. (*Id.*).

**GROUND 11:** Ineffective Assistance of Trial Counsel. Appellate Counsel's performance was constitutionally deficient for failing to raise meritorious claims of ineffective assistance of trial counsel. (*Id.*).

**GROUND 12:** Failure to interview potential witnesses. Trial Counsel should have questioned the many guests at the party to find defense witnesses instead of having Johnson testify as to the truth of the events, as it was objectively reasonable to foresee that having Johnson testify would open him up to questioning that would ultimately be damaging. (*Id.* at p. 43).

**GROUND 13:** Failed to hire GSR Expert. Trial counsel should have acquired a gun shot residue (GSR) expert to testify on the behalf of the defense. Although appellate counsel did set forth this error, counsel was ineffective for failing to proffer how this prejudiced Johnson, which is required to satisfy the second prong of the two prong analysis to establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). (ECF Doc. 10-1, p. 43).

**GROUND 14:** Failed to get Expert for Phone Call Recording. Trial Counsel should have acquired an expert to decipher the telephone call recorded by [W.M.]. (ECF Doc. 10-1, p. 43). In *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985), the U.S. Supreme Court recognized a due process right to expert assistance under these circumstances. (ECF Doc. 10-1, p. 44).

**GROUND 15:** Ineffective Assistance of Counsel. Trial counsel demonstrated that he did not understand the basis of the charges – thus demonstrating ineffective assistance. (*Id.*).

**GROUND 16:** In County Jail clothing at Trial. Trial counsel should not have allowed Johnson to appear before the Jury in County Jail issued clothing. "[A]n accused should not be compelled to go to trial in prison or Jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system . . . [C]ompelling the accused to stand trial in Jail garb operates usually against only those who cannot post bail prior to trial. Persons who can secure release are not subjected to this condition. To impose the concept of equal Justice embodied in the Fourteenth Amendment." *Estelle v. Williams*, 425 U.S. 501, 504-06 (1976). (ECF Doc. 10-1, p. 44).

**GROUND 17:** Prosecution Suppressed Firearm Evidence. The trial court committed the following prejudicial errors that require reversal, which appellate counsel failed to raise in Johnson's appeal despite being specifically advised of the errors in a letter dated 7/15/19 that was docketed on 7/16/19. The U.S. Supreme Court maintains that constitutional rights are violated when the defense is precluded from introducing evidence of third-party guilt. *Holmes v. South Carolina*, 527 U.S. 319, 326 (2006). The Sixth Amendment guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). (ECF Doc. 10-1, p. 45).

**GROUND 18:** The trial court committed reversable error by allowing the autopsy photos of the victim to be show to the Jury. It is well established that autopsy photos are inflammatory and are therefore only permitted to be shown to the jury when they are essential to the resolution of evidence that is in conflict. (*Id.*).

**GROUND 19:** The trial court erred when it denied the motion to appoint an investigator filed 3/29/18. Although appellate counsel did raise this error, counsel failed to proffer and prejudice suffered as a result of the denial of an investigator. Appellate counsel was ineffective because prejudice must be shown to establish abuse of discretion. The effective assistance of counsel guarantee requires, when necessary (as here), the appointment of an investigative assistance for indigent defendants in order to insure effective preparation of their defense by their attorneys. *Mason v. Arizona*, 504 F.2d 1345, 1351 (9th Cir. 1974). (ECF Doc. 10-1, p. 45).

**GROUND 20:** The court committed reversible error when it allowed hearsay evidence to be entered. (*Id.* at p. 46).

**GROUND 21:** The trial court also erred when it allowed the witness detective to provide expert testimony on gun shot residue (GSR) when he is not qualified as an expert in this field. The trial court should have instructed the jury accordingly. (*Id.*).

**GROUND 22:** The trial court again erred when denying Johnson his right to enter the gun shot residue (GSR) evidence, as it was not only exculpatory, but was also evidence of third-party guilt. Abuse of discretion by the trial court judge, prosecutorial misconduct, ineffective assistance of trial counsel, a violation of *Brady* because this GSR test results were withheld. (*Id.* at p. 46-47).

**GROUND 23:** The trial committed reversible error when it gave the Jury flight instruction when there literally was no flight as a matter of Law. (*Id.* at p. 47).

**GROUND 24:** Repeat Violent Offender (RVO) specifications unlawfully imposed consecutive to one another. Appellate counsel was ineffective for failing to contend that the RVO specifications for Counts One and Nine could not be imposed consecutive to one another as a matter of law. (*Id.* at p. 48).

18

**GROUND 25:** The sentence for the RVO specification for Count Nine could not be imposed consecutive to the sentence imposed on the offense itself, and has identical elements of proof for a finding of the Double Jeopardy Clause in the United States Constitution for the same reasoning and analysis as that pertaining to the *Blockburger v. United States*, 254 U.S. 299 (1932) line of cases. (ECF Doc. 10-1, p. 49).

**GROUND 26:** Petitioner was denied the effective assistance of trial counsel, as well as his right to due process and a fair trial, as a result of counsel's failure to enter evidence of perjury on behalf of two of the State's witnesses. There is a reasonable probability that had the evidence of witness perjury been disclosed, the result of Petitioner's trial would have been different. (*Id.*).

**GROUND 27:** Trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments for failing to move the trial court for a change of venue due to the pervasive pretrial publicity, which ultimately deprived Petitioner of a fair trial and an impartial jury. (*Id.* at p. 52). Johnson contends that under the particular circumstances of his case, "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle would be but a hollow formality." *Rideau v. State of Louisiana*, 373 U.S. 723, 725 (1963). (ECF Doc. 10-1, p. 51).

**GROUND 28:** Trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments, for failing to move the trial court to sequester the jury. (*Id.* at p. 53).

**GROUND 29:** Petitioner's right to a fair trial and an impartial jury under the Sixth and Fourteenth Amendments were violated when Jurors took a tour of the County Jail where they saw the Petitioner being held in custody and in County Jail issued clothing. (*Id.*).

**GROUND 30:** Trial Counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments for failing to challenge the array of the Jury venire. (*Id.*).

**GROUND 31:** Petitioner was deprived of his right to confront his accusers at his preliminary hearing held January 9, 2018, despite his specific request to do so. (*Id.*).

## V.  Federal Habeas Corpus Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Johnson's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28

U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S.

362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion. " *Burt*, 571 U.S. at 18. Federal courts must also defer

to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted).  Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

**VI. Procedural Barriers to Federal Habeas Corpus Review**

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v.*

*Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.    Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1) reliance upon federal cases employing constitutional analysis;

(2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not

23

fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he

failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See*

*Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th

Cir. 2006).

### B.    Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow

the state's procedural requirements for presenting his or her claim in state court. *See Coleman v.*

*Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have

the authority to insist that "defendants present their arguments on time and according to

established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal

habeas court will not consider a habeas petition if "the last state-court judgment denying relief on

the claim rests on a procedural state-law ground that is 'independent of the federal question and

is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013)

(quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally

defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply

with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is

an adequate and independent state ground for denying review of a federal constitutional claim;

and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v.*

*Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created

safety-valves to permit review in limited circumstances. A petitioner can obtain review of

procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept

24

him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VII.    Discussion

Before the Court is Respondent's Motion to Dismiss, in which he argues Johnson's petition is barred from review by the AEDPA one-year statute of limitations. (ECF Doc. 12, p. 19). Respondent further argues that statutory tolling does not apply to render Johnson's petition timely, and Johnson cannot establish that he is entitled to equitable tolling. (*Id.* at pp. 20-32). As such, Johnson's petition is nearly five months too late. (*Id.* at p. 31).

Johnson contends that Respondent's allegation that his petition is five months untimely is unfounded. (ECF Doc. 15, p. 1). He asserts that his petition consists of four separate state court proceedings, namely: (1) his direct appeal; (2) the App. R. 26(A) application for reconsideration; (3) the App. R. 26(B) application to reopen appeal; and (4) the second postconviction petition

under R.C. 2953.21. (ECF Doc. 15, p. 1). Johnson alleges that "[b]ecause there are four separate state court proceedings comprising the habeas petition, there are four separate deadlines relative to the one-year statute of limitations under 28 U.S.C. 2244(d) – because each are relative to the respective dates that the Ohio Supreme Court declined to accept jurisdiction." (ECF Doc. 15, p. 1). Johnson further argues that AEDPA's statute of limitations has not yet tolled because the state court has not yet ruled on his Rule 26(A) claims. (*Id.* at p. 2). Finally, Johnson argues that, even if the Court determines that his petition is untimely, equitable tolling should apply to prevent miscarriage of justice in his case. (*Id.* at pp. 6-8).

Thus, to determine whether Johnson's petition was timely filed, I must first determine whether the statute of limitations period was tolled during the pendency of Johnson's multiple state appeals, and whether Johnson is entitled to equitable tolling. For the reasons set forth below, I find that neither apply. Dismissal of Johnson's petition is warranted because the one-year statute of limitations has expired and he has not established equitable tolling applies. Accordingly, I recommend the District Court dismiss the petition with prejudice.

### A.    Statutory Tolling Does Not Render Johnson's Appeal Timely

AEDPA provides: "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute of limitations period runs from the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could
>     have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). AEDPA allows for statutory tolling under § 2244(d)(2) when it

states: "The time during which a properly filed application for State post-conviction or other

collateral review with respect to the pertinent judgment or claim is pending shall not be counted

toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also*

*Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016). Statutory tolling extends "until the

application has achieved final resolution through the State's post-conviction procedures," *Carey*

*v. Saffold*, 536 U.S. 214, 220 (2002), or "until the expiration of the period for further State court

review, whether or not the petitioner actually seeks such review," *Holbrook*, 833 F.3d at 615,

quoting *Whitcomb v. Smith*, 23 F. App'x 271, 273 (6th Cir. 2001). And, as Johnson recognizes in

his briefings before this Court, the statute of limitations is not tolled during the filing of a

subsequent petition for certiorari to the United States Supreme Court because that period is

within the federal system and is "not a part of a 'State's post-conviction procedures.'" *Lawrence*

*v. Florida*, 549 U.S. 327, 337 (2007) (quoting 28 U.S.C. § 2244(d)(2)).

Unfortunately for Johnson's petition, the statute plainly states that only *properly filed*

state postconviction motions apply to toll AEDPA's statute of limitations. With respect to

statutory tolling, "[a]n application is 'filed,' . . . when it is delivered to, and accepted by, the

appropriate court officer for placement into the official record," but only "is '*properly* filed'

when its delivery and acceptance are in compliance with the applicable laws and rules governing

filings," including applicable time limitations. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis

in original). As such, the United States Supreme Court holds that the AEDPA one-year statute of

limitations is not tolled where a petitioner does not follow state court filing procedures. *See Pace*

*v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (finding statutory tolling under § 2244(d)(2) inapplicable where the state court petition was itself untimely).

However, even where a petitioner has properly filed a state postconviction motion and tolls AEDPA's statute of limitations, statutory tolling under 28 U.S.C. § 2244(d)(2) does not serve to revive the one-year limitations period. *Vroman v. Brigano*, 346 F.3d 589, 601 (6th Cir. 2003). Rather, statutory tolling only pauses a clock that has not yet expired. *Id.*

Here, Johnson's conviction became final on February 8, 2021, 90 days after the Ohio Supreme Court declined to accept jurisdiction of his direct appeal. Thus, absent tolling, Johnson had until February 9, 2022 to file his federal habeas corpus petition. And although Johnson filed a number of postconviction motions in Ohio state courts, many were not properly filed. After review, I find only his 26(B) application for reopening was properly filed and will statutorily toll the statute of limitations; all others were not properly filed and do not toll.

### 1.     First Postconviction Proceeding under Ohio Revised Code 2953.21

Johnson's first appeal under O.R.C. § 2953.21 was filed *pro se* on June 22, 2018, before the conclusion of his direct appeal when his conviction was not yet final. (ECF Doc. 12-1, pp. 182-206; *see also* 28 U.S.C. § 2244(d)(1)(A)). The state court denied this motion to vacate judgment on August 22, 2018. (*Id.* at p. 613). However, the AEDPA statute of limitations clock did not begin to run until February 8, 2021, when his conviction became final at the conclusion of his direct appeal. Therefore, this first postconviction motion has no effect on tolling the AEDPA statute of limitations.

### 2.     Timely Rule 26(B) Motion

The only properly filed motion tolling the AEDPA statute of limitations is Johnson's Rule 26(B) motion.

28

According to the Ohio Rules of Appellate Procedure 26(B)(a), "[a]n application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Here, Johnson filed his Rule 26(B) motion on November 10, 2020, appealing the August 24, 2020 decision affirming his conviction and sentence, well within the ninety-day time line. The state appellate court denied this motion on February 2, 2022. (ECF Doc. 12-1, pp. 239-44). Although Johnson later petitioned for review in the Ohio Supreme Court, this appeal was not properly or timely filed, and was ultimately declined.

The AEDPA statute of limitations was tolled from February 9, 2021 – the conclusion of his direct appeal – through the date of the appellate court's decision on February 2, 2022. Therefore, Johnson then had one year from the state court's February 2, 2022 decision – in line with those portions this appeal that were properly filed – to file his federal habeas corpus petition. He did not file in this court until July 7, 2023, roughly five months beyond the expiration of the AEDPA statute of limitations. Therefore, his petition in this Court is untimely and must be dismissed, absent equitable tolling.

### 3. Second Postconviction Motion under Ohio Revised Code 2953.21

Johnson next filed a second postconviction motion under O.R.C. § 2953.21, on December 28, 2020. (ECF Doc. 12-1, pp. 245-73). However, as the state court determined on March 31, 2022, this appeal was not timely, and furthermore, was successive and barred from review by the doctrine of *res judicata*. (*Id.* at pp. 398-407; *see also Johnson II*, No. 21CA011732, 2022 WL 970305, *appeal not allowed,* 189 N.E.3d 826). The Ohio Supreme Court declined jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4) on July 5, 2022. (*Id.* at p. 439; *see also State v. Johnson*, 189 N.E.3d 826 (Ohio 2022) (Table)).

29

Although this motion was filed after his conviction became final, it does not serve to statutorily toll the AEDPA statute of limitations, because it was not properly filed.

### 4.  Untimely Rule 26(A) Motion

Johnson also argues that his multi-year pending Rule 26(A) application continues to toll the AEDPA statute of limitations. (ECF Doc. 15, pp. 3-5). In part, he requests a stay until the state court rules on his motion – which he acknowledges may not happen, stating "one has to wonder if staying the habeas petition is reasonable after a three year wait with no decision." (*Id.* at p. 4). In the alternative, he requests this court find that the state court's delay qualify as an implicit denial of his pleading, and requests this Court now review his petition. (*Id.* at pp. 4-5).

But this delayed response does not save the present petition, as his original Rule 26(A) filing was itself not timely. Ohio Rule of Appellate Procedure 26(A)(1)(a) requires an application for reconsideration be made in writing "no later than ten days after the clerk has both mailed to the parties the judgment or order in question and made a note on the docket of the mailing . . . ." Here, Johnson filed a Rule 26(A) application to reconsider the August 24, 2020 decision of the appellate court on March 15, 2021. (ECF Doc. 12-1, pp. 440-99). As noted on the state appellate court's docket, the Ninth District's decision was mailed the same day, on August 24, 2020. (*Id.* at p. 619). Therefore, his March 15, 2021 motion under Rule 26(A) was untimely and would not serve to statutorily toll the statute of limitations.

### 5.  Other Postconviction Filings

On June 15, 2022, Johnson filed a *pro se* motion titled "Take Judicial Notice Article II: Rule 201(E)." (ECF Doc. 12-1, p. 587). On June 22, 2022, the state trial court denied this motion finding it another attempt to file motions for postconviction relief without meeting the requirements of Ohio Revised Code § 2953.23(A)(1); as such, it was untimely and successive.

(*Id.* at p. 598). With this decision by the state court, it becomes apparent that this motion was not "properly filed" and would not serve to statutorily toll the AEDPA statute of limitations.

Therefore, unless equitable tolling applies – which I find it does not, as described below – Johnson's federal habeas corpus petition is untimely.

**B.  Equitable Tolling Does Not Apply**

It is possible to equitably toll the AEDPA statute of limitations. This is so because the AEDPA statute of limitations is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted). It "does not set forth an inflexible rule requiring dismissal whenever its clock has run." *Id.* Federal courts may apply equitable tolling to "relieve hardships, which, from time to time, arise from a hard and fast adherence to more absolute legal rules." *Id.*

Equitable tolling is granted in two contexts: traditional equitable tolling and "actual innocence" equitable tolling, which I discuss below.

**1.  Traditional Equitable Tolling**

To support a claim of traditional equitable tolling, Johnson must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649, quoting *Pace*, 544 U.S. at 418. Traditional equitable tolling is "applied sparingly," and the petitioner retains the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

Here, Johnson argues that his petition should be heard because his limitations period has not begun to run. (ECF Doc. 15, pp. 1-2). He states that Respondent's contention that his petition is untimely, is meritless. (ECF Doc. 15). He further argues that he "has shown extraordinary

diligence in pursuing relief in the state courts and in protecting/asserting his federal constitutional rights." (*Id.* at p. 6).

I agree that Johnson has been diligent in filing appeals throughout the pendency of his case, which may meet the first of the two elements described in *Holland*. However, I find he has not met the second *Holland* element – "that some extraordinary circumstance stood in his way and prevented timely filing." In Johnson's case, he had multiple filings that did not meet state filing requirements.

For Grounds 1 through 8, Johnson asserts they are timely because the state court has not yet ruled on them – but, as discussed in greater detail above, the Rule 26(A) application was not properly filed and does not toll the statute of limitations, and I do not find reason to grant equitable tolling with respect to these claims.

He argues that Grounds 9 through 25 – the grounds raised in his Rule 26(B) appeal – are timely because he appealed to the Ohio Supreme Court, and his AEDPA statute of limitations date should be counted as of the date it declined jurisdiction. (ECF Doc. 15, pp. 2-3). However, his petition was untimely. Moreover, it was not properly filed with this appeal; it was considered in conjunction with the appeal of the postconviction motion under Ohio Revised Code § 2953.21. As such, it may not serve to toll the statute of limitations for the reasons described above. And in his petition before this Court, Johnson has not presented an extraordinary circumstance of the type that would allow me to grant equitable relief. (*See id.*).

With respect to Grounds 26 through 31, he states that "his court appointed trial and appellate attorneys advised him that they were going to raise the claims in the proceedings to which they were responsible, but ultimately failed to do so – thus causing the claims to be untimely." (ECF Doc. 15, pp. 5-6). But, because the attorney acts as the agent of the petitioner, a

mere allegation that an attorney failed to file something on the petitioner's behalf is insufficient to show extraordinary circumstances prevented filing. *See Holland*, 560 U.S. at 656 (Alito, J., concurring) (collecting cases). Rather, "[i]n the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation." *Coleman v. Thompson*, 501 U.S. 722, 754 (1991).

Therefore, I do not find reason to grant traditional equitable tolling, and do not recommend as much to the District Court. I continue to recommend dismissal of Johnson's petition.

### 2.      Actual Innocence Equitable Tolling

A petitioner may be eligible for equitable tolling via actual innocence "if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 F. App'x. 606, 609 (6th Cir. 2012). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial.' *Id.*, quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). The U.S. Supreme Court has outlined "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence' as examples of 'reliable evidence'" but "[s]uch evidence . . . is 'obviously unavailable in the vast majority of cases,' because actual-innocence claims are 'rarely successful.'" *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024), quoting *Schlup*, 513 U.S. at 324.

This exacting standard requires Johnson to establish by clear and convincing evidence, that, but for the constitutional errors at trial, no reasonable juror would have convicted him. 28 U.S.C. 2244(b)(2)(B)(ii). For purposes of federal habeas review, this Court must holistically

consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell,* 547 U.S. 518, 538 (2006) (internal quotations and marks omitted). But, importantly, "actual innocence" in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "This means a petitioner may not pass the equitable gateway by simply undermining the state's case." *Hubbard*, 98 F.4th at 743. Although impeachment evidence undermining the state's case is relevant and helpful to the petitioner's case, it is not sufficient; the petitioner must also demonstrate exonerative evidence. *Id.*, citing to *Schlup*, 513 U.S. at 324 and *House*, 547 U.S.at 552-53.

Here, Johnson presents evidence that undermines the state's case, but is not itself demonstrative of actual innocence. Attached to his responsive brief, Johnson presents evidence of gunshot residue testing found on T.P. as supportive of actual innocence. (ECF Doc. 15-1). However, demonstrating that gunshot residue was found on T.P. does not demonstrate Johnson's actual innocence, particularly where the state court's factual findings include eyewitness accounts asserting that both Johnson and T.P. had handled the firearm during the events surrounding T.D.'s death. The U.S. Supreme Court has stressed that the new evidence standard described in *Schlup v. Delo* is "demanding" and the evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin v. Perkins,* 569 U.S. 383, 383 (2013), quoting *Schlup*, 513 U.S. at 316. Johnson has not shown that this evidence is of the

34

type that would meet such a demanding standard. I therefore determine that actual innocence equitable tolling does not apply.

Therefore, equitable tolling does not apply to render Johnson's petition timely. I conclude that dismissal of his petition is appropriate, and recommend the District Court dismiss his petition with prejudice.

## VIII.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

Here, AEDPA's statute of limitations bar is well-established, and Johnson has not shown that he is entitled to equitable tolling. Thus, if the District Court accepts my recommendations, Johnson will not be able to show that my conclusions in this Report and Recommendation are debatable. Therefore, I recommend that no certificate of appealability issue in this case.

## II.     Recommendation

For the foregoing reasons, I recommend granting Respondent's motion to dismiss and that Johnson's Petition for a writ of habeas corpus be dismissed as untimely. I further recommend he be denied a certificate of appealability.

Dated: August 22, 2024

Reuben J. Sheperd
United States Magistrate Judge

_____

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge

36

without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).